MICHAEL L. BROWN, UNITED STATES DISTRICT JUDGE
*1254 For the reasons below, the Court finds Claimant Cronos Agro, LLC has no valid PACA trust claim and overrules its objection to the Omnibus PACA Trust Chart. (Dkt. 441.)
I. Background
Defendants ABL Farms, Inc. and Southern Melon Distributors, Inc. bought and sold wholesale quantities of perishable produce. (Dkt. 57 at ¶ 4.) Plaintiffs Evergreen Farms & Produce, LLC, Coast to Coast Produce, LLC, Delightful Quality Produce Company, LLC, Delfino Marketing, Inc., Fresh-Pro, Inc., Hapco Farms, LLC, Hendrix Produce, Inc., Ward Thomas d/b/a Majestic Produce Sales Co., Sandia Depot, Inc., William Manis Produce Marketing (a d/b/a of William Manis Company), Bagley Produce Company, Inc., and Intervening Plaintiffs New Era Produce, L.L.C., Pura Vida Farms, LLC, Williams Farms, LLC, C.H. Robinson Worldwide, Inc., Dean Tucker Farms Produce, Inc., Ricker Hill Farms, Inc. (collectively, the "Plaintiffs") sold perishable produce to Defendants ABL Farms and Southern Melon. Defendants, however, did not pay them. (Id. ) Claimant Cronos Agro, LLC ("Cronos") also sold perishable produce to ABL Farms but was not paid for its goods. (Dkts. 118 at ¶ 4, 118-1 at 2-22.)
Plaintiffs sued ABL Farms, Southern Melon, and others under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 7, et. seq. The Court entered a consent injunction establishing the PACA Claims Procedure and the process by which claimants could assert claims under PACA. (Dkt. 25.)
Claimant Cronos was not one of the initial plaintiffs. It filed a proof of claim on December 31, 2015. (Dkt. 118.) In doing so, Cronos alleged that it sold several loads of seedless watermelons to Defendant ABL Farms in June 2015. (Dkts. 118 at ¶ 4, 118-1 at 2-22.) Cronos also alleged that it provided ABL Farms a billing summary for watermelons it sold. (Dkt. 118-1 at 24.) Finally, Cronos alleged that Defendant ABL Farms was required to pay by late July 2015 but did not. (Id. at 2-12.) Cronos asserted a claim for $ 51,388.58. (Dkt. 118 at ¶ 8.)
On the same day, Cronos provided ABL Farms a "formal written renewed/continuing demand" for the immediate payment of the unpaid invoices. (Dkt. 118-1 at 27.) Omar S. Cruz, the managing member of Cronos, also filed a document pro se on behalf of Cronos entitled "Notice of Joinder" and stated that Cronos "hereby gives [sic] of its joinder in the Plaintiffs' First Amended Complaint." (Dkt. 119 at 1.) Cruz purported to incorporate the facts he set forth in Cronos's "PACA Proof of Claim" and "all of the factual and legal allegations *1255 and prayers for relief set forth in the First Amended Complaint ...." (Id. )
ABL Farms and several Plaintiffs filed objections to Cronos's claim, alleging (among other things) that Cronos was not a perfected beneficiary of the PACA trust created by 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46. (Dkts. 154, 157, 159, 160.) Cronos challenged those objections. (Dkt. 207.) On August 16, 2017, Plaintiff New Era Produce filed the Proof of Claims Chart as required by the PACA Claims Procedure. (Dkt. 428-1.) In doing so, Plaintiff New Era Produce disallowed Cronos's claim finding (inaccurately) that it had not responded to the other Plaintiffs' objections. (Id. at n.2.)
Cronos was required to object to the Claims Chart by August 27, 2017. (Dkt. 25 at 17.) It did not meet that deadline, filing its objection on August 30, 2017. (Dkt. 441.)
Meanwhile, Plaintiffs settled nearly all claims. The only issue left to consider is whether Claimant Cronos is an eligible and perfected beneficiary of the PACA trust and whether it complied with the PACA claims procedure in asserting its claims so that it may recover amounts currently held in the PACA trust. Cronos claims that it has done everything required to recover its share of the trust proceeds while Plaintiffs argue it has not. The parties filed a Motion for Order and Ruling on Objection to the Omnibus PACA Trust Chart (Dkt. 443) in order to bring this final issue to the Court. The Court held oral argument in December 2018. (Dkt. 531.)
II. Discussion
Congress enacted PACA in 1930 to "suppress unfair and fraudulent business practices in the marketing of perishable commodities." Nickey Gregory Co., LLC v. AgriCap, LLC , 597 F.3d 591, 594 (4th Cir. 2010). Congress amended the statute in 1984 to provide sellers of perishable agricultural products a first-priority security interest in their goods. Id. at 594-95. The right created by PACA trumps all other security interests and is enforced as a trust. 7 U.S.C. § 499e(c).
A PACA trust is created when the seller "transfers ownership, possession, or control of goods to a commission merchant, dealer, or broker," also known as a PACA trustee. 7 C.F.R. § 46.46(c)(1). Once the trust is created, the beneficiary of the PACA trust must perfect its interest by providing the trustee with "written notice of [its] intent to preserve the benefits of the trust" within the time allotted by the statute. 7 U.S.C. § 499e(c)(3). The notice "must be in writing [and] must include the statement that it is a notice of intent to preserve trust benefits." 7 C.F.R. § 46.46(f)(1). "The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust." 7 U.S.C. § 499e(c)(3). The notice of intent to preserve benefits must include (1) the names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor; (2) the date of the transaction, commodity, invoice price, and terms of payment; (3) date of receipt of notice that a payment instrument has been dishonored; and (4) the amount past due and unpaid. See 7 C.F.R. § 46.46(f)(1). An unpaid supplier, seller, or agent loses the benefits of a trust on commodities and sales proceeds by failing to give written notice of its intent to preserve the benefits of the trust within thirty calendar days of when the payment was due. See 7 U.S.C. § 499e(c)(3), 7 C.F.R. § 46.46(f)(2).
A. Cronos Did Not Timely Object to the PACA Proof of Claims Chart.
Cronos contends that Plaintiff New Era Produce erred when it found that *1256 Cronos had not responded to the other Plaintiffs' objections to its claim on the PACA trust. Cronos argues that footnote two of the PACA Trust Chart is wrong. As a result, it claims Plaintiff New Era improperly disallowed its claims.
Cronos is correct - footnote two of the Trust Chart is wrong. Cronos challenged the other Plaintiffs' objections to its trust claim. (Dkt. 207.) Cronos, however, made a different error. It failed to timely file its objections to the PACA trust chart. The PACA Claims Procedure required parties to object to the PACA trust chart by August 26, 2017. (Dkts. 25 at ¶ 26, 398 at 3.) Cronos was aware of this deadline. And, yet, it filed its objections on August 30, 2017. That alone is enough to deny its objection.
B. Cronos Did Not Comply with PACA Requirements and the Court's Orders.
Even putting aside Cronos's procedural error, Plaintiffs contend Cronos is not an eligible and perfected beneficiary of the PACA Trust because it failed to perfect its rights as required under the statute and because it failed to intervene properly. Cronos contends that its actions were sufficient to asserts its rights as a PACA beneficiary and to join this matter. The Court agrees with Plaintiffs.
1. Cronos Did Not Perfect its Claim as Required.
The PACA security interest arises automatically. But a prospective claimant must perfect its interest by providing the buyer the required notice of its intent to preserve the benefits of the trust within thirty days of when payment was due. See 7 U.S.C. § 499e(c)(3) ; 7 C.F.R. § 46.46(f)(1)-(2). The PACA statute specifically states that an unpaid seller like Cronos "shall lose the benefits of such trust" unless it provides the required notice. 7 U.S.C. § 499e(c)(3).
Cronos sold watermelons to Defendant ABL Farms on several different days in June 2015, with payments due on July 25, 27, and 30, 2015. (Dkts. 118 at ¶ 4, 118-1 at 2-22.) Cronos has not asserted or provided documentation showing that it sent the required notice within the thirty-day window - that is, before August 25, 27, and 30, 2015. It appears Cronos first tried to provide that notice on December 31, 2015. (Dkt. 118-1 at 27.)
Cronos claims that it complied with Section 499e(c)(4), because it included the required notice on the payment invoices it provided with each shipment. Section 499e(c)(4) allows a PACA licensee to provide the necessary notice on its invoices rather than providing a separate notice thirty days after a buyer fails to pay. Specifically, it provides:
[i]n addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: [ ]The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 ( 7 U.S.C. 499e(c) ).
7 U.S.C. § 499e(c)(4) (emphasis added). Cronos, however, was not a PACA licensee in June 2015. Cronos thus was not able to preserve its trust rights by merely including the statutory language on its invoices. See In re Bissett Produce, Inc. , 512 B.R. 528, 533 (Bankr. E.D.N.C. 2014) ;
*1257 Derek & Matthew Bissette Farms v. Bissett Produce, Inc. , 612 F. App'x. 684 (4th Cir. 2015) ; see also In re Superior Tomato-Avocado, Ltd. , 481 B.R. 866, 870 (Bankr. W.D. Tex. 2012) (finding notice language on bottom of invoices, standing alone, did claimant "no good whatsoever" because claimant was not PACA licensee).[1]
Cronos correctly notes that some courts have found substantial compliance with the notice requirement sufficient given the remedial and protective nature of the statute. But those cases merely excuse some defect in the substance of the notice provided. None of those cases - or any other case the Court has identified - either waive the notice requirement altogether or allow a non-licensee to provide notice on its invoices. While substantial compliance may relax the requirements, it cannot rewrite the statute Congress passed.
Cronos, for example, cites Hull Co. v. Hauser's Foods, Inc. , 924 F.2d 777 (8th Cir. 1991). In that case, the seller timely provided the debtor with notice. Id. at 779. But, the notice did not explicitly state that the seller was preserving its trust benefits or provide the payment due date (as required by the statute). Id. Nevertheless, "the debtor could derive all of the required information" from the documents provided and the notice "evidence[d] the fact that the [the seller] wanted to preserve its trust benefits." Id. at 783. The district court found that the timely notice sufficiently complied with the statute to preserve the seller's trust benefits. Id. ; see also Valley Chip Sales, Inc. v. New Arts Tater Chip Co. L.L.C. , 96-2351, 1996 WL 707028, at *3 (D. Kan. Oct 10, 1996) (finding plaintiff timely mailed defendant letter that provided defendant notice that satisfied PACA procedural requirements).
Cronos also cites In re Superior Tomato-Avocado, Ltd. , 481 B.R. 866 (Bankr. W.D. Tex. 2012). The seller in that case, like Cronos, was not a PACA licensee. But, again like Cronos, it included the statutory information required by 7 U.S.C. § 499e(c)(4) on the bottom of its invoices. Id. at 868-69. The court found this ineffective:
As earlier noted, had A & A been a licensee pursuant to section 499e(c)(4), then the notice set out on the bottom of every invoice would have been sufficient to perfect its right to claim the trust. But A & A never bothered to become a licensee. Thus, the notice language on the bottom of the invoices, standing alone, does A & A no good whatsoever. A & A has to have complied with subsection (c)(3) in order [to] qualify for the trust.
Id. at 870 (emphasis added). The court, however, found that the seller had otherwise provided timely notice by sending the debtor a statement of account, a notice of intent to preserve PACA trust benefits, and 100 invoices within the thirty-day window. Id. at 869, 873. The court held that the notice substantially complied with the requirements of 7 U.S.C. § 499e(c)(3) and preserved the seller's rights. All of these cases merely provide that - if a seller provides some form of notice within the required time - its failure strictly to provide all statutorily required information may be waived. Substantial compliance with the requirements of the notice may be sufficient.
Those cases are irrelevant to Cronos's arguments here. Unlike the sellers in those cases, Cronos did not give written notice of its intent to preserve its trust benefits until December 2015, several months after payment was due. This is not *1258 a question of whether its timely notice substantially complied with PACA requirements as Cronos provided no such notice. And the Court cannot allow Cronos the benefit of the invoice-notice provision available to PACA licensees under the guise of substantial compliance. The Court is aware of no other court having done so. Indeed, the court in Superior Tomato-Avocado found the non-licensee seller was not entitled to the invoice-notice provision. Moreover, such an interpretation would essentially re-write the statute. Congress provided this notice method only to PACA licensees. A ruling that it is available to a non-licensee who substantially complies with its requirements would defeat the intent of Congress. That is beyond the Court's power.
The Court finds that Cronos failed to comply with 7 U.S.C. § 499e(c)(3) or (4) and does not qualify for PACA trust benefits.
2. Cronos Failed to File a Notice of Joinder as Required.
The Court's PACA Claims Procedure required Cronos (or any other party wanting to join this action) to file and serve a PACA proof of claim, all documents supporting its claim, and a complaint in intervention. (Dkt. 25 at ¶ 27.) The PACA Claims Procedure provided that,
Except for good cause and the absence of substantial prejudice to the non-moving parties shown, ANY SUPPLIER OR CREDITOR WHO FAILS TO TIMELY FILE A PACA PROOF OF CLAIM AND COMPLAINT IN INTERVENTION WITH THE COURT SHALL BE BARRED from thereafter asserting any claim under PACA against the [Defendants], Escrowed Assets, other PACA Claimants, or third parties ....
(Id. at ¶ 29.)
Cronos filed a proof of claim and supporting documents. It did not, however, file a complaint in intervention. Instead, it filed a document entitled "Notice of Joinder" on Cronos's behalf. (Dkt. 119.) In it, Mr. Cruz stated that Cronos "gives of [sic] its joinder in the Plaintiffs' First Amended Complaint" and "incorporates the facts set forth in its PACA Proof of Claim ... and all of the factual and legal allegations and prayers for relief set forth in the First Amended Complaint ...." (Id. at 1.) Cronos contends "that its Notice of Joinder constitutes its submission to the jurisdiction of this court and there is no opposition to said position of record." (Dkt. 207 at 18.)
Cronos's argument lacks merit. Several parties objected to Cronos's PACA trust claim based on its failure to properly file a complaint in intervention. (See Dkts. 154 at 8, 159 at 3-4, 160 at 4, 207 at 5.) Cronos never fixed its error. The Court notified Cronos that its failure to file a complaint in intervention would bar its claim and now finds that it does.
III. Conclusion
For the foregoing reasons, the Court GRANTS Intervenor-Plaintiffs' Motion to Rule on Objection to the Omnibus PACA Trust Chart (Dkt. 443) and PACA Trust Creditors' Motion for Summary Ruling or Motion for Oral Argument on the Final Outstanding Claim to Close the Case (Dkt. 524). The Court finds Cronos has no valid PACA trust claim and OVERRULES Cronos's objections (Dkt. 441) to the PACA Proof of Claims Chart (Dkts. 428, 428-1). The Court DIRECTS the Clerk to close this case.
SO ORDERED this 13th day of February, 2019.

Cronos first obtained its PACA license number in December 2015. (Dkts. 118 at ¶ 2, 157-1 at 2.)